UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                     Case No. 3:23-cr-94

          Plaintiff,

   v.                                                      MEMORANDUM OPINION
                                        AND ORDER

Sherman Golden,
          Defendant.

## I.     INTRODUCTION

Before me is Defendant Sherman Golden's motion to dismiss Count 3 of the indictment.
(Doc. No. 48).  The government filed a brief in opposition.  (Doc. No. 53).  The motion became
decisional, and I took it under consideration on December 23, 2024, when Golden declined to file a
brief in reply.  For the reasons that follow, I deny Golden's motion.

## II.     BACKGROUND

On March 19, 2024, Golden and two others were charged in a three-count indictment
alleging a drug trafficking scheme and illegal firearms behavior.  Golden was charged with
conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21
U.S.C. § 846 (Count 1), and knowing possession of a firearm by a person previously convicted of a
felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 3).  (Doc. No. 11 at 1, 3).  As
relevant here, the indictment alleges Golden was previously convicted of "Burglary and Robbery" in
the Lucas County, Ohio Court of Common Pleas in 1993 and "Aggravated Burglary," also in the

Lucas County Court of Common Pleas, in 2004.[1] (*Id.* at 3). On February 24, 2024, Golden allegedly possessed two firearms: a Buckstalker XT .50 caliber rifle, and a SCCY CPX-2 9 millimeter pistol. (*Id.*)

### III.    ANALYSIS

Golden brings both facial and as-applied challenges to his prosecution under § 922(g)(1). (*See* Doc. No. 48 at 3, 7). His facial challenge fails because the Sixth Circuit held in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024), that "§ 922(g)(1) is constitutional on its face" under the Second Amendment. 113 F.4th at 662; *see also United States v. Parham*, 119 F.4th 488, 495 (6th Cir. 2024). Golden acknowledges that "[t]he Sixth Circuit's holding in *Williams* forecloses his facial challenge." (Doc. No. 48 at 7). So, I need only evaluate whether § 922(g)(1) is constitutional as applied to him. The framework set out in *Williams* likewise governs Golden's as-applied challenge. *See Parham*, 119 F.4th at 495 n.4.; *United States v. Goins*, 118 F.4th 794, 804 (6th Cir. 2024).

### A.    The *Williams* As-Applied Framework

Because § 922(g)(1) is facially constitutional under the Second Amendment, a "class-wide presumption" of constitutionality applies to those charged under the statute. *Williams*, 113 F.4th at 657. Therefore, a defendant bringing an as-applied challenge bears the burden "to show he's *not* dangerous;" the government need not affirmatively establish a defendant is dangerous enough to be prosecuted under the felon-in-possession statute. *Id.* at 662 (emphasis added).[2] Consistent with the

---

[1] As I explain below, Golden's 2004 conviction was for aggravated robbery, not the "Aggravated Burglary" offense stated in the Indictment.

[2] *Williams* addressed a post-conviction challenge to § 922(g)(1), and Golden brings his challenge pre-trial. But nothing in *Williams* suggests a fundamentally different inquiry should apply to a pre-trial Second Amendment challenge. Just as "a court can accept prior convictions without an evidentiary hearing or jury fact finding" in the sentencing context, *Williams*, 113 F.4th at 662 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998)), so must I "view the [i]ndictment's factual allegations as true" in evaluating Golden's motion to dismiss. *Costello v. United States*, 350 U.S. 359, 363 (1956). As I explain below, the nature of the evidence is somewhat different, because, unlike in *Williams*, there is no presentence report on which I can rely. *See Williams*, 113 F.4th at 662. Instead,

case-specific nature of the challenge, this inquiry "focus[es] on each individual's specific characteristics" and takes into consideration "the individual's entire criminal record." *Id.* at 657. This includes "any evidence of past convictions in the record, as well as other judicially noticeable information." *Id.* at 660.

But this is no "categorical" inquiry. *Williams*, 113 F.4th at 660 (citing *Mathis v. United States*, 579 U.S. 500, 504 (2016), by way of counterexample). Instead, "[t]he dangerousness determination will be fact-specific, depending on the unique circumstances of the individual defendant." *Williams*, 113 F.4th at 660; *see also Goins*, 118 F.4th at 805 (considering the "totality of the facts" related to the defendant's criminal history). Beyond "the fact of conviction alone," a court "may consider how an offense was committed." *United States v. Morton*, 123 F.4th 492, 499 (6th Cir. 2024). This task also involves the exercise of judicial common sense, such as a court's "informed judgment about how criminals commonly operate." *Williams*, 113 F.4th at 660 (internal citation and quotation marks omitted).

*Williams* analyzed three classes of prior convictions. First, "crimes against the person," a category including many common law felonies like rape, murder, and robbery, "speak directly to whether a person is dangerous" in the Second Amendment context. *Id.* at 658. While *Williams* formally left as an "open question" whether "crimes in this bucket are dispositive," a defendant with a prior conviction for a crime directly involving physical harm or a serious physical threat carries an "extremely heavy" burden to disprove their presumed dangerousness. *Id.* In fact, dangerousness may be "self-evident" from a prior conviction falling in this category. *Id.* at 660. For example, the Sixth Circuit has concluded that a defendant previously convicted of an "attempted second-degree

_____

I take the truth of the indictment's allegations about Golden's prior convictions as a starting point, but because *Williams* requires a "fact-specific" inquiry that depends "on the unique circumstances of the individual defendant," I consider other relevant evidence, too. *Id.* at 660.

murder offense [which] involved shooting a young child" was "exactly the type of individual our history and tradition allow Congress to disarm." *Parham*, 119 F.4th at 496.

The second class of offenses are "not strictly crimes against the person" but "may nonetheless pose a significant threat of danger.  These crimes do not always involve an immediate and direct threat of violence against a particular person," but "most of [them] put someone's safety at risk, and thus, justify a finding of danger." *Williams*, 113 F.4th at 659.  One example is "drug trafficking," which "poses a danger to the community" and "often leads to violence." *Williams*, 113 F.4th at 659 (quoting *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010)) (internal citation and quotation marks omitted).

Another is burglary, which "creates the possibility of a violent confrontation between the offender and occupant." *Williams*, 113 F.4th at 659 (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)) (internal quotation marks omitted).  Consistent with this rationale, the Sixth Circuit has found that multiple prior convictions for driving under the influence, including one incident resulting in a motor vehicle accident, evinced a "dangerous pattern" of behavior that "pose[d] a danger to public safety" and thus helped to justify disarming the defendant under § 922(g)(1). *Goins*, 118 F.4th at 804.

The final category of crimes includes those which "cause no physical harm to another person or the community." *Williams*, 113 F.4th at 659.  Unlike the first two classes of offenses, "many of these crimes," such as mail fraud or making false statements, "don't make a person dangerous." *Id.*  In all, the gravamen of *Williams*'s analysis, as buttressed by subsequent precedent, is physical harm.  A record containing a conviction for an offense directly involving significant physical harm to one or more persons is very likely to make that defendant dangerous enough to be disarmed under the Second Amendment, while a record involving only convictions that are highly attenuated from such harm is unlikely to render that defendant dangerous. *See id.* at 657-60.  Further, a pattern

4

of conduct risking or causing physical harm strengthens the inference that a defendant is dangerous

enough to be prosecuted under § 922(g)(1). *See Goins*, 118 F.4th at 804; *Parham*, 119 F.4th at 495-96.

**B.      Evidence of Golden's Specific Characteristics**

Before determining whether Golden has met his burden to show he is not dangerous, I

explain what kind of evidence I may and may not consider under *Williams*. I noted above that the

procedural context of *Williams* is not a perfect fit for this case because *Williams* involved a post-

sentencing challenge to a § 922(g)(1) conviction, while this case involves a pre-trial motion to

dismiss the indictment. *See Williams*, 113 F.4th at 662. As a result, no facts have yet been found by a

judge or jury, and I also do not have the advantage of a thorough presentence report to inform my

analysis. *See id.*

But at the motion to dismiss stage, I must treat the allegations in the indictment as true. *See,*

*e.g.*, *United States v. Roman*, 17 F. Supp. 3d 706, 708 (S.D. Ohio 2014). *Williams* places "the burden . . .

on [the defendant] to show he's not dangerous." *Williams*, 113 F.4th at 662. So, even though I view

the allegations in the indictment as true by default, Golden may point to evidence of his "specific

characteristics" to rebut the presumption that he is dangerous enough to face prosecution under §

922(g)(1). *Id.* at 657.

The *Williams* court "recognize[d] that courts may wish to consider information beyond

criminal convictions when assessing a defendant's dangerousness," noting that the Supreme Court,

in *United States v. Rahimi*, 144 S. Ct. 1889 (2024), had considered a state-court-issued civil restraining

order. *Williams*, 113 F.4th at 658 n.12 (citing *Rahimi*, 144 S. Ct. at 1895). This includes the judicially-

noticeable information available on the dockets for Golden's various convictions. *See Williams*, 113

F.4th at 657, 658 n.12; *Goins*, 118 F.4th at 804 (considering the defendant's four prior DUI

convictions, two public intoxication convictions, and two driving with a suspended license

convictions, including the fact that one of the DUI convictions "resulted in a motor vehicle

accident"); *Parham*, 119 F.4th at 496 (considering the fact that the defendant's "attempted second-degree murder offense involved shooting a young child"); *Morton*, 123 F.4th at 500 (approving the district court's reliance on "state court judgments . . . attached as exhibits").

The indictment cites three felony convictions from the Lucas County, Ohio Court of Common Pleas.  First, on March 12, 1993, Golden pled guilty to one count of burglary and one count of robbery, in violation of Ohio Revised Code §§ 2911.12 and 2911.02, both second-degree felonies under Ohio law.[3]  *State v. Sherman Golden*, Guilty Plea, No. G-4801-CR-0199305257 (Lucas Cnty. C.P. March 12, 1993).  He was sentenced to six years in prison for each offense, to be served concurrently.  *State v. Sherman Golden*, Judgment Entry, No. G-4801-CR-0199305257 (Lucas Cnty. C.P. March 31, 1993).  Seven years later, on September 7, 2004, Golden pled no contest to aggravated robbery in violation of Ohio Revised Code § 2911.01(A)(1), a first-degree felony under Ohio law.  *State v. Sherman Golden*, Guilty Plea, No. G-4801-CR-0200402396 (Lucas Cnty. C.P. Sept. 7, 2004).  He was sentenced to four years in prison.  *State v. Sherman Golden*, Non-document entry, No. G-4801-CR-0200402396 (Lucas Cnty. C.P. Sept. 21, 2004).

Since then, Golden has been convicted of two firearms possession offenses.  On April 20, 2011, he pled no contest to one count of attempted carrying of a concealed weapon in violation of Ohio Revised Code §§ 2923.02 and 2923.12(A)(2) and (F).  *See State v. Sherman Golden*, Guilty Plea, No. G-4801-CR-0201101284 (Lucas Cnty. C.P. April 20, 2011).  He was sentenced to four years of community control, a non-custodial sentence.  *See State v. Sherman Golden*, Judgment, No. G-4801-

---

[3]  Both § 2911.12, which prohibits burglary, and § 2911.02, which prohibits robbery, contain several different enumerated offenses corresponding to the manner and means of the crime.  The publicly available documents for Golden's 1993 convictions for burglary and robbery indicate only that he pled guilty to violations of "2911.12" and "2911.02," so it is not possible to discern, from these documents alone, any more information about how those crimes were committed.  *See State v. Sherman Golden*, Guilty Plea at 2, No. G-4801-CR-0199305257 (Lucas Cnty. C.P. March 12, 1993).

CR-0201101284 (Lucas Cnty. C.P. June 29, 2011).  The statute under which Golden was convicted indicates he attempted the concealed carry of a handgun.  Ohio Rev. C. § 2923.12(A)(2).

In addition, on December 11, 2014, Golden pled guilty to having a weapon while under disability in violation of Ohio Revised Code § 2923.13(A)(2)—Ohio's felon-in-possession law—also in the Lucas County Court of Common Pleas.  *State v. Sherman Golden*, Guilty Plea, No. G-4801-CR-0201302361-000-D1 (Lucas Cnty. C.P. Dec. 11, 2014).  He was sentenced to four years of community control for that offense as well. *State v. Sherman Golden*, Judgment Entry, No. G-4801-CR-0201302361-000-D1 (Lucas Cnty. C.P. Dec. 19, 2014).

Golden also asks me to consider an academic article and a proposed amendment to the United States Sentencing Guidelines to support the proposition that his relatively young age at the time of some of his convictions renders those offenses less probative of his dangerousness under *Williams*.  (Doc. No. 48 at 6).[4]

Under the guidance given in *Williams*, crediting these arguments would require me to take judicial notice of facts related to the effect of continuing brain development on a young person's behavior.  *Williams* left "the question of what information is relevant" to the dangerousness inquiry "for another day."  *Williams*, 113 F.4th at 658 n.12; *see also United States v. Bell*, Case No. 2:20-cr-20336, 2024 WL 4589812 at *5 n.1 (E.D. Mich. Oct. 28, 2024) (stating that "*Williams* did not provide any guidance" on the question of whether a court may consider "circumstances underlying the indictment").  But it did focus on facts that are "judicially noticeable."  *Williams*, 113 F.4th at 660; *see* Fed. R. Evid. 201.  A fact is judicially noticeable if it "is not subject to reasonable dispute

---

[4] Golden cites: Amendments to the Sentencing Guidelines (Preliminary) at 15-16 (April 17, 2024), (available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202404_prelim-rf.pdf) *and* Arain, Mariam, *et al.*, *Maturation of the adolescent brain*, 9 Neuropsychiatric Disease & Treatment 449-61 (2013) (available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3621648/).  The proposed amendments to the Sentencing Guidelines were codified in the Federal Register at: Sentencing Guidelines for United States Courts, 89 Fed. Reg. 36853 (May 3, 2024).

because it . . . is generally known within the trial court's territorial jurisdiction or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

I explained why I may not consider the specific academic article and Guidelines amendments on which Golden relies in *United States v. Norris*, Case No. 3:23-cr-572, 2024 WL 4816246 at *4-5 (N.D. Ohio Nov. 18, 2024). The academic article on the topic of brain development invokes the kind of specialized knowledge appropriate for expert testimony under Federal Rule of Evidence 702(a) but inappropriate for a court's summary consideration. *Norris*, 2024 WL 4816246 at *5. As for the proposed amendments, "the issuance of a proposed rule is not enough, by itself, for me to take judicial notice of certain statements within it." *Id.*; *cf. Changizi v. Dep't of Health and Human Servs.*, 82 F.4th 492, 498 n.7 (6th Cir. 2023) (explaining that the court "could conceivably take judicial notice of the fact that an analogous case is ongoing in another circuit" but could not "take judicial notice of the truth of assertions detailed in various judicial filings").

Moreover, while the amendment in question indicates that a defendant's youthfulness is a factor that may warrant leniency at sentencing, nothing in the Guidelines or the briefing offered here explains how I might apply that general principle to Golden's specific case. *See* Sentencing Guidelines for United States Courts, 89 Fed. Reg. 36853, 36859 (May 3, 2024) ("[a] downward departure . . . may be warranted due to the defendant's youthfulness at the time of the offense or prior offenses"). Golden himself acknowledges that "the precise age of development for each person would need to be determined," but he provides no ready way to do so for him. (Doc. No. 48 at 6). Therefore, following *Williams*'s guidance, and given the briefing and argument by the parties here, I will only consider Golden's criminal record and any underlying facts to the extent they are judicially noticeable.

**C.      Applying *Williams* to Golden**

Golden has failed to rebut the presumption of dangerousness that attaches because of his prior felony convictions.  Over the last three decades, Golden has accumulated a substantial record of felony offenses: convictions for burglary and robbery in 1993, aggravated robbery in 2004, attempted concealed carry of a handgun in 2011, and unlawful possession of a firearm in 2014.

His oldest crimes are his most serious.  Burglary, while not the most significant type of offense catalogued in *Williams*, is nevertheless "dangerous because it 'creates the possibility of a violent confrontation between the offender and occupant.'"  *Williams*, 113 F.4th at 659 (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)).  The two robbery offenses are more serious still: they are "crimes against the person" and are thus "strong evidence" of Golden's dangerousness. *Williams*, 113 F.4th at 658.

The aggravated robbery conviction, in particular, stands out because Golden was convicted under a subsection indicating he "[h]a[d] a deadly weapon on or about [his] person or under [his] control" during the offense and displayed the weapon, brandished it, indicated he possessed it, or used it during or immediately after the crime.  Ohio Rev. C. § 2911.01(A)(1).  Golden has already used a weapon once to commit a theft offense; the *Williams* court doubted that "someone who commits such a dangerous and violent act" could "overcome the presumption that they are dangerous" enough to be denied access to firearms.  113 F.4th at 658; *see also United States v. Vaughn*, Case No. 23-5790, 2024 WL 4615853, at *1–2 (6th Cir. Oct. 30, 2024) (explaining that the defendant's 2002 conviction for aggravated robbery "alone [] would almost certainly be sufficient to conclude that the defendant presented a danger to the public such that they could be constitutionally disarmed").

Golden's two subsequent firearms possession convictions do not help him.  In *Williams*, the court indicated that the government could have "pointed to" that defendant's single prior felon-in-

9

possession conviction "to demonstrate his dangerousness." 113 F.4th at 662. Unlike in *Williams*, there is no indication the firearms Golden possessed were closely connected to other violent crimes. *See id.* (noting that the defendant had "agreed to stash a pistol that was used to murder a police officer"). Nevertheless, Golden's *two* prior firearm possession convictions demonstrate his repeated willingness to flout Ohio's gun laws and therefore support the presumption of dangerousness in this case. *Cf. Goins*, 118 F.4th at 804 (relying on the defendant's "pattern" of repeated offenses to support a finding of dangerousness).

Golden, who is 52, argues that his prior convictions do not show he is dangerous because a substantial amount of time has elapsed between his prior burglary and robbery convictions and his current indictment. (*See* Doc. No. 48 at 5-6). Relatedly, he points out that he was relatively young when he was convicted: 20 years old for the 1993 burglary and robbery, and 27 years old for the 2004 aggravated robbery. (*See id.*).

In the wake of *Williams*, several courts have drawn the "common sense" inference that older convictions are less probative of dangerousness than newer ones. *United States v. Jennings*, Case No. 2:24-CR-20173-TBG-EAS, 2024 WL 4560602 at *4 (E.D. Mich. Oct. 24, 2024) (giving less weight to a 27 year-old conviction); *United States v. Buford*, Case No. 2:23-CR-20375-TGB-EAS, 2024 WL 5239444 at *6 (E.D. Mich. Dec. 27, 2024) (giving less weight to a 28 year-old conviction); *United States v. Green*, Case No: 23-cr-20506, 2024 WL 4469090 at *3 (E.D. Mich. Oct. 10, 2024) (finding that the "age" of a 13 year-old conviction "weighs against considering it heavily"); *see also Williams*, 113 F.4th at 660 (drawing a "commonsense" inference about the probative value of certain offenses and explaining that "district courts may make an informed judgment about how criminals commonly operate"). In line with this reasoning, I find that the passage of time between Golden's 1993 and 2004 convictions and the behavior for which he is currently indicted reduces the extent to which

10

they indicate his dangerousness now.  *See* Fed. R. Evid. 609(b), (d) (limiting the admissibility, as impeachment evidence, of convictions more than ten years old).

But the passage of time does not rebut the presumption of dangerousness in Golden's case. To begin with, *Williams* placed great emphasis on "crimes against the person" such as robbery, even if it left as an "open question" whether "crimes in this bucket are dispositive."  113 F.4th at 637. And as I explained above, Golden used a weapon when he committed robbery in 2004, which "speak[s] directly" to his willingness to use a firearm in a dangerous manner.  *Id.* at 658; *see State v. Sherman Golden*, Guilty Plea, No. G-4801-CR-0200402396 (Lucas Cnty. C.P. Sept. 7, 2004).

Further, as *Goins* underscored, a court must consider a defendant's record holistically.  *See* 118 F.4th at 804 ("Goins's record reveals a dangerous pattern . . . pos[ing] a danger to public safety").  Golden's record, taken as a whole, shows a pattern of reckless and violent behavior in the 1990s and early 2000s—his burglary and robbery convictions—followed by repeated, willful violations of Ohio's firearm possession laws in 2011 and 2014.  Golden has presented "no countervailing evidence" of his current behavior and life circumstances that might serve to undermine an inference of dangerousness based on his lengthy criminal record.  *Vaughn*, 2024 WL 4615853 at *2; *United States v. Johnson*, Case No. 24-20429, 2024 WL 4729467 at *5 (E.D. Mich. Nov. 8, 2024) (citing the "dearth of evidence indicating [the defendant's] reformation").

Other courts, when faced with defendants whose most serious convictions occurred over a decade ago, have found that those defendants failed to rebut the presumption of dangerousness when they offer no evidence of their current life circumstances and when their criminal record also includes more recent, if less serious, convictions.  *See, e.g.*, *United States v. Sykes*, Case No. 3:19-cr-00060, 2025 WL 52737 at *4-5 (M.D. Tenn. Jan. 8, 2025) (rejecting an as-applied challenge for a defendant with three felony drug convictions in 2006 and several more recent misdemeanors); *Buford*, 2024 WL 5239444 at *6-7 (rejecting the defendant's as-applied challenge and noting that if

11

his 28-year-old second-degree murder conviction "were Buford's only prior conviction, and if in the intervening years he had proven himself to be a model citizen, Buford might be able to carry his burden of showing non-dangerousness"); *Vaughn*, 2024 WL 4615853, at *1–2 (relying on a 2002 conviction for aggravated robbery and six other more recent offenses); *see also United States v. Lyle*, Case No: 23-cr-20098, 2024 WL 4956615 at *2 (E.D. Mich. Dec. 3, 2024) (noting that the defendant would "have a difficult time showing he is not dangerous" with a record that included a 1982 armed robbery conviction along with more recent drug offenses).

Likewise, I find that Golden's 1993 convictions for burglary and robbery, 2007 conviction for aggravated robbery, 2011 conviction for attempted concealed carry of a handgun, and 2014 conviction for possession of a firearm by a felon, taken together, make him sufficiently dangerous to be prosecuted under § 922(g)(1) consistent with the Second Amendment and with *Williams*. Golden has failed to carry his burden to rebut the presumption of dangerousness.

## IV.   CONCLUSION

For the reasons stated above, I deny Golden's motion to dismiss. (Doc. No. 48).

So, Ordered.

s/ Jeffrey J. Helmick
United States District Judge

12